**SIGNET CORPORATION, Plaintiff,**

v.

**INTERBANK FINANCIAL SERVICES, INC., Clyde R. Gilbert and Romeo J. Abenoja, Defendants.**

**No. 87 Civ. 7085 (DNE).**

United States District Court, S.D. New York.

Jan. 30, 1991.

Kelly & Roth, New York City (William H. Roth, of counsel), for plaintiff.

Alex A. Bohm, New York City, of counsel, for defendants.

OPINION & ORDER

EDELSTEIN, District Judge:

Plaintiff Signet Corporation ("Signet") has moved for summary judgment pursuant to Fed.R.Civ.P. 56 seeking to enforce a promissory note executed and delivered by defendant Interbank Financial Services, Inc. ("Interbank") in the amount of $265,000. For the following reasons, plaintiff's motion is granted in the amount of $200,000 with the issue of whether Interbank is liable for the remaining $65,000 to be referred to a Magistrate Judge for an inquest.

I.  BACKGROUND

■    Civil Rule 3(g) of the Rules of the United States District Courts for the Southern and Eastern Districts of New York requires that a party moving for summary judgment must submit a separate, short and concise statement of the material facts as to which the moving party contends there is no issue to be tried. Rule 3(g) further provides:

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Plaintiff submitted a memorandum of law, affidavits, exhibits and a 3(g) statement in support of its motion for summary judgment. In opposition to plaintiff's motion, defendant Interbank filed an affidavit of Romeo J. Abenoja, the president of Interbank and a named defendant in this action, with one exhibit. Defendant Interbank did not provide a 3(g) statement setting forth the material facts as to which it contends there is a genuine issue to be tried. Accordingly, all material facts set forth in plaintiff's 3(g) statement will be deemed to have been admitted. Nonetheless, the allegations set forth in defendant's affidavit in response to plaintiff's motion will be examined. As discussed below, the allegations in defendant's affidavit do not raise any genuine issues of material fact requiring a trial.

## II. FACTS

On March 18, 1987, plaintiff Signet and defendant Interbank executed an agreement ("the Agreement") in which Interbank agreed to lend Signet $5,500,000 for 10 years at a fixed interest rate. The Agreement further provided that Signet Corporation would pay Interbank a commitment fee of $275,000, of which a substantial portion would be refunded in the event Interbank could not secure the loan. Plaintiff's exhibit number five is a copy of the Agreement which provides for a refund of $265,000. Defendant's exhibit number one is a purported copy of a second agreement between the parties which is alleged to have been executed later on the same day. Defendant's exhibit number one repeats verbatim the terms in plaintiff's exhibit number five with one exception: defendant's exhibit number one provides for a refund of $200,000.

The Agreement was modified on March 27, 1987, to reflect that the closing of the loan would occur within sixty days of March 27, 1987. On March 19, 1987, Signet forwarded the sum of $75,000 to Interbank as an advance on the commitment fee. On March 27, 1987, Signet forwarded the remaining $200,000 due as a commitment fee to "Signet Corporation Escrow Account" at Korea Commercial Bank of New York. Korea Commercial Bank was to hold the $200,000 in escrow in the form of two certificates of deposit. Subsequently, without the authority of Signet, the certificates of deposit were released from escrow and pledged by Interbank as collateral for an outstanding loan it had with Korea Commercial Bank.

Interbank never made a loan of $5,500,000 to Signet. Interbank never refunded any portion of the $275,000 commitment fee to Signet. Thereafter, on August 21, 1987, Interbank, by its corporate officer, Thomas Larson, executed a promissory note in the amount of $265,000. At the time the note was signed, Interbank presented a check in the amount of $30,000 as partial pre-payment of the note. The $30,000 check was dishonored by the bank.

## III. DISCUSSION

A party moving for summary judgment must establish "that there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of establishing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The non-moving party then has the burden of coming forward with specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In meeting this burden, the non-moving party may not rely on speculation and conjecture as to the true nature of the facts. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). To avoid

summary judgment, there must be enough evidence in favor of the non-moving party's case for a rational trier of fact to return a verdict in the non-moving party's favor. *National Union Fire Ins. Co. v. Walton Ins. Ltd.*, 696 F.Supp. 897, 900 (S.D.N.Y. 1988).

In the instant action, it is undisputed that there is a facially valid note signed by Larson, on behalf of Interbank, making $265,000 payable to Signet. In its affidavit in response to plaintiff's motion for summary judgment, Interbank attacks the validity of the note by arguing that Larson signed the note under duress, that Larson did not have authority to execute the note on behalf of Interbank, and that the note was unsupported by consideration. These arguments will be examined in turn.

■ A note, or contract, is voidable on the ground of duress when it is "established that a party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will." *Austin Instrument, Inc. v. Loral Corp.*, 29 N.Y.2d 124, 130, 324 N.Y. S.2d 22, 25, 272 N.E.2d 533, 535 (1971); *see Printers II, Inc. v. Professional Publishing, Inc.*, 615 F.Supp. 767, 772 (S.D.N.Y. 1985) ("Duress exists where there is a wrongful act depriving another of his free will"), *aff'd* 784 F.2d 141 (1986). A threat is not "wrongful" and will not constitute duress if a party has a right to do what it has threatened. *Printers II*, 615 F.Supp. at 772 (citing *Gerstein v. 532 Broad Hollow Rd. Co.*, 75 A.D.2d 292, 429 N.Y.S.2d 195, 199 (1st Dep't 1980)).

In the instant action, plaintiff's attorney at the time of the events in question, Paul O'Brien, threatened to report Interbank to banking officials and the Justice Department in order to investigate the manner in which the $200,000 in funds were released from the escrow account at Korea Commercial Bank and to investigate the practices of Interbank in taking a commitment fee to secure a loan without a banking license. Interbank argues that these threats were wrongful and forced Interbank to sign the promissory note. Given the unauthorized removal of funds from the escrow account,

plaintiff's threat to report Interbank was not wrongful and could not have removed its free will in signing the note. Accordingly, there is no genuine issue of material fact regarding defendant's claim of duress.

■ The affidavit of Romeo J. Abenoja, submitted in response to plaintiff's motion for summary judgment, alleges that Larson did not have authority to sign a note on behalf of Interbank for the amount of $265,000 and further alleges that plaintiff's attorney, Paul O'Brien, fraudulently represented to Larson that Abenoja agreed to pay $265,000.

It is black letter law that principals are bound by the acts of their agents performed within the scope of the agent's authority. *Aries Ventures Ltd. v. Axa Finance S.A.*, 729 F.Supp. 289, 299 (S.D.N.Y.1990). Actual authority for an agent to act on behalf of a principal may be delegated expressly by words which directly authorize him to act or may be implied from the facts and circumstances attending the transaction in question. *Peoples Westchester Savings Bank v. Ganc*, 705 F.Supp. 164, 168 (S.D.N.Y.1989). The sworn statement and the deposition of testimony of defendant's agent who signed the note, Larson, both specifically state that he was given actual authority to sign the note.

Larson, a member of the Pennsylvania bar since 1970, executed an affidavit on August 21, 1987, along with the note which stated:

I, Thomas E. Larson, do hereby depose and say: that I am the Corporate Secretary of Interbank Financial Services Inc., a Delaware corporation; that I have been authorized on behalf of Interbank Financial Services Inc. to execute a note dated August 21, 1987 in the amount of $265,000 payable to Signet Corporation of 1800 West Loop South, Texas 77027, and that I have hereby executed said Note this 21st day of August, 1987, and that the above and foregoing is true.

(Plaintiff's Exhibit 4, p. 6). Further, Larson's deposition testimony states that he obtained specific authorization to execute the note in the amount of $265,000:

I had also at that point in time told Romeo [Abenoja] that because of the

problems with the New York State—they had also called New York State Banking Department—they, Mr. O'Brien, [Signet's attorney] and that he was upping the ante to two sixty-five and Romeo said, Well, I am not going to pay that. And I said, Well, look, let's again, you know, worry about that sometime down the road. Right now I would like to get these people off our backs and if it takes me negotiating a two sixty-five note, we can worry about the difference later, as I recall was my advise to him, and *he said okay.*

(Larson Dep. at p. 92) (emphasis added). Abenoja's affidavit does not address Larson's sworn statement or his deposition testimony, but merely asserts that "[a]ll this was done without authority from Interbank." (Abenoja Aff., ¶ 10, p. 4). This blanket statement is not sufficient to create an issue of material fact.

The one remaining issue is the two agreements dated March 18, 1987, which contain exactly the same terms, but provide for different amounts of a refund of Signet's commitment fee in the event that Interbank could not secure the loan.[1] Given the dispute as to the amount of the refund provided for in the agreement between the parties, plaintiffs are granted judgment here in the amount of $200,000. The issue of whether plaintiff is entitled to $65,000 in addition to this judgment will be referred to a Magistrate Judge for an inquest.

## IV. CONCLUSION

For the reasons stated above, Signet's motion for summary judgment is granted in the amount of $200,000 with the issue of whether Signet is entitled to an additional $65,000 to be referred to a Magistrate Judge.

SO ORDERED.

---

**1.** Interbank's claim that the note is not supported by consideration is completely unfounded given the March 18, 1987 agreement, which

provides for a refund of the commitment fee in the amount of either $200,000 or $265,000.